No. 21,955.

JOE MUCKENTHALER et al., *Appellees*, v. W. C. NOLLER et al.,
*Appellants*.

SYLLABUS BY THE COURT.

1. COSURETYSHIP—*Right of One Surety to Enforce Contribution from Another*. Where several persons, or sets of persons, enter into contracts of suretyship which are the same in their legal operation and character, though by different instruments, at different times, and without the knowledge of each other, they will be bound to mutual contribution.

2. SAME—*Signers of Promissory Note—When Cosurety Entitled to Contribution*. It was claimed that plaintiffs and defendants signed a note as cosureties to raise a sum for the benefit of the principal; that subsequently plaintiffs' individual notes were given and used for the same purpose for which the original note was executed. *Held*, that the plaintiffs, having paid or satisfied the common obligation, are entitled to contribution, and that the situation is not altered by the fact that the sureties who are sued for contribution had no knowledge that plaintiffs' individual notes were so used.

3. LIMITATION OF ACTIONS—*Defense*. Statutes of limitation are not applicable to mere defenses.

4. SAME—*Statute Does Not Apply to Matters of Pure Defense*. Section 24 of the code of civil procedure, which declares that, "When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense," is construed to mean that a barred right of action cannot be used as a setoff, or counterclaim, or for the purpose of obtaining affirmative relief, but not to apply to matters of pure defense.

5. SAME—*Promissory Note—Attacked for Fraud—Defense Not Barred*. Regardless of any statute of limitations, the instrument or contract upon which an action or right is based may be attacked for fraud after the lapse of the prescribed time, provided the party making the attack does so merely for defense, and seeks no affirmative relief thereby.

6. SAME. In an action on a promissory note, where defendants file a verified answer in which they admit their signatures to be genuine, but deny that they signed the instrument as a note, and allege that their signatures were obtained thereto by fraud, and ask no affirmative relief, whereupon, plaintiffs in their reply plead the statute of limitations which requires actions for relief on the ground of fraud to be commenced within two years after the discovery of the fraud, the reply is bad, for the reason that it directs the limitation to a matter of pure defense.

7. PRACTICE—*Request for Finding Refused—Error.* In such an action it was error for the court to refuse to make a finding of fact upon the question of fraud in the execution of the instrument.

Appeal from Wabaunsee district court; ROBERT C. HEIZER, judge. Opinion filed April 12, 1919. Reversed.

. *C. E. Carroll,* of Alma, and *Z. T. Hazen,* of Topeka, for the appellants.

*William Bowes,* of Alma, and *A. E. Crane,* of Topeka, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The plaintiffs sue for contribution, alleging that, together with the defendants, they executed a promissory note which they were compelled to pay. The plaintiffs recovered, and the defendants appeal.

· The petition alleged that L. Palenske and his wife were indebted to the Commercial National Bank of Alma, on a promissory note which they were unable to pay when it matured, and that on the 27th day of January, 1913, the plaintiffs, together with defendants, executed and delivered their promissory note, due in one year, for $4,000, payable to the order of C. P. Muckenthaler, for the purpose of raising $4,000 for L. Palenske to pay that sum upon the note held by the Commercial National Bank; that Palenske and C. P. Muckenthaler were unable to raise the money upon this note, and that on February 17, 1913, the plaintiffs borrowed the $4,000 from the Farmers National Bank, and the money was applied upon Palenske's debt to the other bank; that in order to raise the money, the plaintiffs gave their individual notes to the Farmers National Bank, one for $500, and the other for $3,500; and that all the parties, in order to raise the money and in consideration thereof, agreed to deliver, and did deliver, to plaintiffs the note signed by them and by defendants to hold as collateral security to indemnify plaintiffs for liability upon their individual notes. Copies of all three notes were attached to the petition. It was alleged that the plaintiffs had been compelled to pay their individual notes, and are entitled to contribution ·from the defendants.

The answer admitted that the signatures attached to the

note were the genuine signatures of the defendants, but alleged
that their signatures were obtained by the false and fraudulent
statements of L. Palenske as to what the paper contained; that
at the time they signed the paper the name of C. P. Mucken-
thaler did not appear thereon as payee or otherwise; that it
was represented to them by Palenske that the paper they were
signing was merely a paper of recommendation, but in fact
there were two papers fastened together, and that the defend-
ants signed only one paper, and did so believing it to be a
letter of recommendation. The answer, which was verified,
denied the execution of the instrument as a note. In addition
to a general denial, the reply pleaded the statute of limitations
as a bar to the defense that the note was secured by fraud.

It appears from the evidence that L. Palenske had been for
a number of years employed in the Commercial National Bank
of Alma, and in 1912 was in serious financial difficulties, and
owed the bank $5,000. He and his wife executed their note for
that amount secured by a mortgage on certain real estate.
When the note fell due, Palenske was unable to pay it. He
secured what might be called a neighborhood or community
note, signed by twenty-three of his neighbors, including the
plaintiffs and the defendants, and this is the note in contro-
versy. The defendants offered testimony to show that none of
them had any notice whatever that they were signing any-
thing but a recommendation, which Palenske presented to
them with the statement that his reputation had been injured
by his being let out of the bank, that he had lived and worked
in that community a great many years, and intended to get a
hundred signatures to show that he was an honest man. The
defendants' evidence tended to show that the instrument they
signed consisted of two papers attached together with a clip,
and purporting to be simply a recommendation for Palenske.

After the signature of his neighbors had been secured,
fraudulently, as the defendants claim, or otherwise, Palenske
offered the note for discount to the Farmers National Bank, in
order to obtain funds to apply on his overdue note to the other
bank. The Farmers National declined to discount any papers
signed by the Palenskes, or to purchase a note signed by so
many of its own customers, but when Palenske asked how he
could obtain the loan, the officer of the bank marked off ten

names of those appearing on the note, and said he would accept two notes, one for $3,500, and one for $500, signed by any three of the ten; that his bank could n't loan more than $3,500 on one note. Palenske then went to the plaintiffs, who had signed the community note with full knowledge that it was a note, and they executed their individual notes to the Farmers National, and the loan was raised in that way. At the same time some arrangement was made by which C. P. Muckenthaler, the person named as payee of the community note, indorsed it, and Palenske left it with the plaintiffs.

The findings made by the trial court show, among other facts, that at the time the note was delivered to plaintiffs, it was duly indorsed before maturity by the payee, and turned over to plaintiffs without any knowledge on their part that any of the defendants claimed they or either of them were induced to sign the note by reason of the fraud complained of in their answer. The defendants requested a finding whether or not their signatures to the note were obtained by fraud. This request was denied, the trial court holding that the statute of limitations, requiring actions for relief on the ground of fraud to be brought within two years from the time the fraud is discovered, barred defendants from relying upon the alleged fraud as a defense. This appears from the fact that the court made another finding, as follows:

"That each and all of the defendants knew of the execution of the note for $4,000, and the circumstances of how their names were procured thereto more than two years before the answer of said defendants was filed herein or the trial had."

The court found that the total amount paid by plaintiffs to the bank by reason of the two notes of $500 and $3,500, including interest, amounted to $4,298.27, and held that the plaintiffs were entitled to judgment for contribution. There is the further finding that the community note was executed by the plaintiffs and defendants and delivered to C. P. Muckenthaler for the purpose of raising the $4,000 to be paid on Palenske's indebtedness to the Commercial National Bank, and that because Palenske was unable to raise the money on that note, the notes of the plaintiffs were executed, and the note in controversy was turned over to the plaintiffs.

The first contention of defendants is that the community

note was turned over without any authority from them to plaintiffs, and that plaintiffs have no right to look to them for contribution. It is true, there is no evidence to sustain the statement in the petition that because the Palenskes and Muckenthaler were unable to raise the $4,000 on the community note, "all parties interested agreed to and did deliver" that note to the plaintiffs to secure the payment of the ones executed by plaintiffs. But it does not follow from this that plaintiffs are not entitled to contribution. The petition alleged, and the court found, that the note upon which the action was based was indorsed to the plaintiffs for value before maturity, but, as defendants contend, the plaintiffs are not entitled to the rights of a holder in due course, and the law of negotiable instruments has no application to this kind of a suit. If the plaintiffs' individual notes were, in fact, given and used for the same purpose for which the original note was executed, the plaintiffs are entitled to contribution from their cosureties, because they have paid or satisfied the common obligation, the real debt for which the original note was given. And the situation is not altered in the slightest degree by the fact that the cosureties who are sued for contribution had no notice or knowledge that plaintiffs' individual notes were so used.

"It is a general rule of equity that all persons liable for the same debt, although by different obligations, executed at different times, are regarded as cosureties, and will be compelled to contribute to the payment of any loss that a cosurety may sustain by having discharged the debt. In other words, the relation of cosuretyship may be said to exist where it appears that there are two or more sureties for the same principal debtor, and for the same debt or obligation, whether on the same or on different instruments." (6 R. C. L. 1045.)

It is said that—

"The situations of the parties are equal when the parties are under a common burden or liability, or where all are bound for the same debt, whether they are jointly or severally bound, whether by the same or different instruments, or whether they knew of each other's engagements or not. . . . Every joint debtor who has been compelled to pay more than his share of the common debt has the right of contribution from each of his co-debtors." (9 Cyc. 795, 796.)

"The rule is, that if several persons, or sets of persons, enter into contracts of suretyship which are the same in their legal operation and character, though by different instruments, at different times, and with-

out the knowledge of each other, they will be bound to mutual contribution." (Note, 10 Am. St. Rep. 639.)

"The right to contribution is inchoate from the date of the creation of the relation between the parties, but is not complete, so as to be enforceable, until there has been an actual payment in whole or in part of the common obligation, or until some thing is done equivalent to a discharge thereof." (9 Cyc. 798.)

"Anything which the creditor accepts as satisfaction, as, for instance, the note of the surety, will be a payment." (Note, 10 Am. St. Rep. 640.)

Here, the petition stated facts, which, if true, showed that the purpose of the execution of the notes by the plaintiffs was to pay the same obligation for which the note signed by all the parties was executed. The payment of the plaintiffs' notes discharged the common burden of all the parties who signed the original note. It was equivalent to a discharge of the common obligation. It is unimportant whether the action is considered as brought upon the note, which it is claimed the defendants executed; the right to contribution is based upon the fact of the execution of the note upon which the parties are cosureties. While it is probably true that plaintiffs could not claim to be holders of that note in due course, still they would have a right to sue for contribution and use the note as a basis for the suit. It is said:

"If a surety, for his own protection, pays off the debt for which he is liable, but does so in the form of a purchase, taking an assignment of the securities to himself, or to some third person for his use, having in mind, however, only the better protection of his rights of subrogation and contribution, the transaction amounts to a payment as to such rights." (6 R. C. L. 1045.)

We hold, therefore, that unless the defendants have a valid defense to the note, the facts pleaded in the petition state a cause of action for contribution.

Defendants' contention that it was error to refuse their request for a finding of fact on the matter of fraud, depends upon whether the defense of fraud is barred by the statute which declares that actions for relief on the ground of fraud must be brought within two years from the time the fraud is discovered. The answer to the question depends upon the effect of section 24 of the code of civil procedure (Gen. Stat. 1915, § 6914), which reads:

"When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense."

The defendants had a "right of action" for relief on the ground of fraud, which accrued to them as soon as they discovered the facts which they say constituted the fraud. The relief they were entitled to might have been obtained by an action to cancel the instrument on the ground that their signatures were obtained fraudulently; but as long as they were not assailed by any person asserting rights against them by virtue of the instrument, they were not required to exercise this remedy, or to take any affirmative action. After two years from their discovery of the facts, their "right of action" was barred, and they could no longer ask a court to cancel the instrument. Their "right of action" was forever lost, but, in the language of Justice Valentine, in *Walker v. Boh,* 32 Kan. 354, 4 Pac. 272, "the defendant is simply *defendant,* and is not asking for any affirmative relief." (p. 358.) That was a suit for the recovery of land sold for taxes, which must be commenced within five years from the recording of the tax deed, "and not thereafter." It was further said in the opinion;

"Now it does not seem that this limitation reaches any such case as this. The statute seems to be enacted to prevent persons from instituting proceedings to defeat or avoid tax deeds after the five years have elapsed, but it does not seem to be enacted for the purpose of preventing persons from defending their rights when attacked. After the five-years limitation has run, the holder of the tax deed may unquestionably retain all that he is in the possession of under his tax deed, but he must not commence an action to obtain something more without being prepared to meet any defense which the defendant may set up. It is possible, and even probable, however, under this statute, that the defendant in the present case can never maintain any action or set up any claim for affirmative relief that would in its effects defeat or avoid the plaintiff's tax deed; but the statute does not seem to go to the extent of saying that a party claiming an interest in real estate shall not defend himself and his title when attacked, as in the present case. We would think that he may defend, so far as his defense is a *pure defense,* but he cannot set up or institute anything in his answer or elsewhere for the purpose of obtaining any affirmative relief." (Italics ours.)    (p. 358.)

So, in the present case the defendants "can never maintain any action or set up a claim for affirmative relief" by reason of the fraud. In other words, they have lost their "right of action" to cancel the instrument, but they may, as a matter of *pure defense,* rely upon the fact that they never knowingly signed the instrument or became liable to pay it because of the fraud. They are not asking to have the note canceled, nor do

they seek any affirmative relief; they merely interpose, as their shield of defense, the fact of fraud in the inception of the instrument upon which plaintiffs' cause of action is founded. The ruling in *Walker v. Boh,* supra, has been followed in several cases, and the particular language of the opinion which we have quoted was approved in *Stump v. Burnett,* 67 Kan. 589, 73 Pac. 894, where it was held that in an action brought by a tax-title holder, a tax deed valid upon its face may be impeached by the defendant, even though the five-year period of limitation has elapsed. It is true that in the cases we have just cited, the particular section of the code was not referred to, but the section itself expressly refers to a right of action "barred by the provisions of any statute."

This is the construction uniformly followed by the court in construing our statutes of limitation. A case directly in point is *Thomas v. Rauer,* 62 Kan. 568, 64 Pac. 80, involving the question of fraud in a conveyance, raised by the answer of defendant, and where plaintiff replied that if there was fraud, more than two years had elapsed since its discovery. The syllabus reads:

"The statute of limitations barring an action for relief on the ground of fraud in two years after the discovery of the fraud affects only the right of action, and does not prevent one who has been injured by the fraud from pleading the same as a shield to protect himself from the action of another." (syl. ¶ 3.)

In the opinion it was said:

"Nor is the claim of Thomas that the statute of limitations had run upon the fraud practiced by W. H. Brooks, jr., in deeding this land well taken. The statute of limitations in this respect only applies to those who seek 'relief on the ground of fraud' (Gen. Stat. 1897, ch. 95, § 12; Gen. Stat. 1899, § 4262), and does not apply to one who is seeking to defend his rights on the ground of some fraudulent transaction. The doctrine is clearly and satisfactorily stated in *Brown v. Cloud County Bank,* 2 Kan. App. 352, 42 Pac. 593: 'The statutory limitation of the time within which "an action for relief on the ground of fraud" must be commenced only applies when the party against whom the bar of the statute is interposed is required to allege fraud in pleading his cause of action or to prove fraud to entitle him to relief.' " (p. 570.)

In the opinion in the case of *Gibson v. Johnson,* 73 Kan. 261, 84 Pac. 982, it was said in reference to section 25 (now section 24) of the code: "Broadly speaking, a defense may be any kind

of opposition to a plaintiff's claim." It was further said in the opinion:

"Whenever new facts are brought upon the record and urged affirmatively against the plaintiff, either as a basis of independent relief or to overthrow the plaintiff's case, so that the position of the parties is reversed and the defendant himself becomes the aggressor, the plaintiff can resist the attack by pleading the bar of the statute of limitations." (p. 264.)

The suggestion that the plaintiff can plead the bar of the statute of limitations whenever the new facts brought upon the record by defendant are used to overthrow plaintiff's case, could, of course, only by sustained by giving to the language of section 24 the broadest literal meaning; and for reasons which will be stated, it is apparent that the court had no intention of overruling the numerous prior decisions which recognize the distinction between matters of pure defense and affirmative relief. The case itself involved merely the question whether the defendant's demurrer to the plaintiff's reply should have been sustained. It was a case where a mortgagor sought to quiet his title against the holder of his mortgage on the naked ground that the defendant had lost the right to foreclose the mortgage because it was barred by the statute of limitations. The plaintiff was the moving party; he avoided bringing upon the record the fact that the statute of limitations was being used by him as a weapon in place of a shield. He did this by stating merely the statutory facts sufficient to show a cause of action to quiet title. The mortgagee, for his defense, described the plaintiff's interest as that of a mortgagor who had not paid his mortgage debt. The defendant did not ask to have his mortgage foreclosed, nor for a judgment on the note, nor for any affirmative relief, but merely asked judgment in his favor for costs. As said in the opinion:

"By his answer the defendant did nothing to relieve the plaintiff of his embarrassment. He merely defined the nature and extent of the claim which the petition charged him with making by supplying a brief description of the instruments relating to it. He did this without indicating that any cause of action had ever accrued to him upon such instruments, without averring that they created any lien or are still enforceable, without asking for any affirmative relief in his favor upon them." (p. 263.)

The reply, and the facts shown by the evidence, disclosed that plaintiff was relying upon the statute of limitations for his "right of action." The effect of section 24 of the general

statutes of limitations was not involved, and the language in the opinion with respect thereto must be regarded as dictum.

In *Bank v. Bay*, 90 Kan. 506, 135 Pac. 584, the answer alleged that the promissory notes sued upon were given under duress practiced by an agent of the plaintiff, and the facts were asserted, not only as a defense to the petition, but as a cause of action for the cancellation of the notes and mortgages. The reply pleaded the bar of the statute of limitations. While it was conceded in the opinion that duress is a species of fraud, a distinction was drawn between duress which attacks the will directly, and acts of fraud which are barred by the two-year statute from the time of the discovery. It was held that the defendants were entitled to rely upon the duress to obtain the affirmative relief, as well as a mere defense. It was said in the opinion:

"The conclusion which the court has reached likewise makes it unnecessary to approve or disapprove the interpretation of section 24 of the code of civil procedure contended for by the plaintiff. Something was said upon the subject in the case of *Gibson v. Johnson*, 73 Kan. 261, . . . The letter of the statute apparently makes this right unavailable as a defense to the foreclosure suit. Following the current of authority, it was held in the case of *Thomas v. Rauer*, 62 Kan. 568, 64 Pac. 80, that the statute of limitations applies only to those who seek 'relief on the ground of fraud,' and not to one defending his rights on the ground of fraud, but the section of the code under consideration was not referred to. Any solution of the question which might be offered here would, of course, be dictum." (pp. 510, 511.)

Although the effect of section 24 of the code of civil procedure upon matters of strict defense has not been directly determined in previous decisions, we think it cannot be said that this section, which has been a part of the general statute of limitations since 1868, had not been discovered when the former decisions were made. And, moreover, we are fully satisfied that by the former decisions to which we have referred, the court is committed to the general doctrine, almost universally recognized by the courts and text-writers, that there is a substantial distinction between pure defenses and those where affirmative relief is sought, and that statutes of limitation are not intended to affect strict defenses. (*Stump v. Burnett*, supra.)

In *Coale v. Campbell*, 58 Kan. 480, 49 Pac. 604, where a tax-deed holder brought ejectment, the turning point in the case

was this distinction between affirmative defenses and pure defenses. In the opinion it was said:

"In this case, the holder of the tax title is not merely defending an action brought to recover possession of the land from him or to declare his deed invalid, but is seeking to recover land in the possession of another." (p. 482.)

In reference to *Walker v. Boh,* supra, the court used this language:

"The decision is rested on the ground that the holder of the tax deed may invoke section 141 *for purposes of defense, but not of attack.* In this case, Campbell, as plaintiff, invoked this section for the purpose of building a title and aiding him in recovering possession of the land." (Italics ours.) (p. 483.)

Of course, both statutes of limitation—the one limiting actions for relief on the ground of fraud (Gen. Stat. 1915, § 6907), and section 24 of the general statute of limitations (Gen. Stat. 1915, § 6914), which refers to the "provisions of any statute" (of limitations)—must be construed together. It is hardly conceivable that the legislature intended by section 24 to deprive a party from interposing any matter of pure defense that he might have to an action brought against him. The section refers not only to defendants, but to plaintiffs and to all parties. When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense. The plaintiff cannot use the barred "right of action" as a cause of action, nor can a defendant use a barred "right of action" as a defense—that is, as a basis or ground of a set-off or counterclaim—use it as a right of action; but any matter arising out of the transaction or contract sued upon may be used to defeat the plaintiff's right to recover.

In a decision holding that a statute limiting the time for the bringing of an action for relief on the ground of fraud is not applicable to mere defenses, it was also held that the principle is a two-edged sword, which cuts both ways, and either party may take advantage of it. (*Louisville Banking Co. v. Buchanan,* 117 Ky. 975.) The action was on a promissory note, where the defendant set up as defense a discharge in bankruptcy; the plaintiff replied in avoidance of such discharge that the money for which the note was given was procured by

fraud, whereupon defendant rejoined that the fraud complained of was barred by limitation. The rejoinder was held to be bad as directing the limitation to the defense and not to the cause of action, inasmuch as it was not necessary for plaintiff to allege or prove the fraud, except to avoid the defense of the discharge in bankruptcy.

In *Amaker v. New,* 33 S. C. 28, in stating the reasons why either party may rely upon a statute of limitations strictly for defense to some claim asserted by the other, it was said:

"The defendants undertook to show a superior title in themselves under the deed in question, and surely the plaintiff was entitled to show any defect in that deed which would render it insufficient to vest title in the defendants, either by showing that it was not under seal, or not executed in the presence of two subscribing witnesses, or that the grantor was *non compos,* or that it was not recorded. If so, why may it not also be shown that it was void for fraud? I do not understand that it ever was the rule that a deed or other instrument could not be attacked for fraud after the lapse of the prescribed time, in any way, but only that it could not be attacked by an action instituted for that purpose. . . . I am unable to understand upon what principle, either of law, equity or good morals, one who has made out a *prima facie* case for the relief he demands can be forbidden from showing that the defense set up against his claim is founded in fraud, simply because such fraud had been committed so long ago as to bar an action brought to obtain relief from such fraud; but I do not think any case can be found which would sustain such a doctrine." (pp. 35, 36.)

In *Wilhite et al. v. Hamrick,* 92 Ind. 594, it was held, where, in an action for the recovery of real estate, the defendant answers setting up that the conveyances were executed for the purpose of hindering and defrauding creditors of the original grantor, a reply that the alleged fraud was committed more than six years before the commencement of the suit is bad on demurrer, for the reason that the limitation pleaded is not applicable to matters of pure defense.

In *Groesbeck v. Seeley,* 13 Mich. 329, 343, Justice Campbell, referring to statutes of limitation, said:

"The law does not compel any man who is unassailed to pay any attention to unlawful pretenses which are not asserted by possession or suit."

In *Baker v. Kelley,* 11 Minn. 480, 495, in an opinion by Chief Justice Wilson, it was said:

"It is not necessary for a party in the enjoyment of his rights to institute any proceedings against an adverse claimant, and to require him to

do so would be, in many cases, imposing a grievous and expensive burden. A law requiring a party to take such action is not, nor has it any analogy to. a statute of limitation. Statutes of limitation only operate as an extinguishment of a remedy, and, of course, can have no application to a party who neither seeks nor needs a remedy."

In 17 Ruling Case Law, page 745, it is said:

"The general rule is that statutes of limitation are not applicable to defenses. . . . It should be noted, however, that the rule under consideration applies only. in the case of strict defenses, and has no application to and does not govern cases of set-off or counterclaim."

In 25 Cyc., page 1063, it is said:

"Pure defenses are held not to be barred by the statute of limitations."

In both Ruling Case Law and Cyc., supra, many authorities are cited sustaining this general rule, and none are cited as holding to the contrary. So. far as we have been able to discover, Oklahoma is the only state which has a statutory provision which reads the same as our section 24, and Oklahoma adopted it from our state, and we find no decisions from their court construing the section. New York, however, has a provision in its statute of limitations which is substantially the same as our section 24. The New York statute reads:

"A cause of action, upon which an action cannot be maintained, as prescribed in this title, cannot be effectually interposed as a defense or counterclaim." (Gilbert's Ann. Code, 1910, § 397.)

It appears that this section was incorporated in the New York code in the revision of 1876. It has remained there through numerous revisions of the code. We have been unable to find any New York decision in which the section has been construed.

Ordinarily, where either party, plaintiff or defendant, claims a superior right or title by virtue of an instrument of writing or contract of any kind, the opposing party may attack the validity of such instrument or contract by showing any fact which tends to impeach its force and effect; and we think that, regardless of any statute of limitations, a deed or instrument or contract upon which an action or right is based, may be attacked for fraud after the lapse of the prescribed time, provided the party making the attack does so merely for a defense, and seeks no affirmative relief thereby.

Our own case of *Thomas v. Rauer*, supra, is cited in a note in

4 A. & E. Ann. Cas. 933, in support of the rule that "the statute of limitations is a bar to the remedy only, and does not extinguish, or even impair, the obligation of the debtor."

The circuit court of appeals of the eighth circuit held in *Williams v. Neely*, 134 Fed. 1, 13, that a defense on the ground that there had been a breach of a covenant against encumbrances on the land for the purchase price of which the note was given, is not barred by the statute of limitations, because the defense attaches to and inheres in the note itself, and while the cause of action upon that obligation survives, the defense lives and runs with it, although an affirmative action upon the subject of the defense may be barred by the statute of limitations.

As well said by the supreme court of South Carolina:

"Such a defense grows out of the contract itself, which is the cause of action, and is not barred by the statute of limitations. It would be manifestly unjust to permit the vendor to enforce a subsisting contract, and deny to the purchaser, from lapse of time, a defense involving the validity of it at its inception." (*Evans v Yongue*, 8 Rich. [S. C.] 113, 115.)

It follows that the defendants were entitled to interpose the defense of fraud, and it was error to refuse to make the requested finding of fact upon the question of fraud.

The judgment is reversed, and the cause is remanded for another trial.

PORTER, J. (concurring specially) : Upon reasons additional to those stated in the opinion, I think the statute of limitations had not barred defendants' right to set up fraud in the execution of the instrument. The trial court held that the defense of fraud was barred because more than two years had elapsed from the time of the discovery of the fraud until the time defendants filed their answer. Plaintiffs, however, commenced the action within less than two years from the time defendants discovered the fraud. The great weight of authority sustains the doctrine that in pleading the statute of limitations even to a counterclaim, it must be shown that the bar of the statute had matured when the original suit was commenced, and it is not sufficient to allege that it was barred when the counterclaim was filed. If the counterclaim or set-off is not barred at the commencement of the action in which it is pleaded, it does not become so afterward, during the pendency of that action.

(*Brumble v. Brown, Ex'r,* 71 N. C. 513; *Stilwell, Ex'r, v. Bertrand,* 22 Ark. 375; *McEwing v. James,* 36 Ohio St. 152; *Walker v. Clements,* 15 Q. B., n. s., 1046; *Dunn, by next friend, v. Bell and others,* 85 Tenn. 582; *Williams v. Lenoir,* 67 Tenn. 395; *Eve v. Louis et al.,* 91 Ind. 457; 17 R. C. L. 746; 25 Cyc. 1312.)

To this rule an exception is generally recognized, but the exception applies only to claims set up by one defendant against a codefendant.

"A suit by one defendant against a codefendant prosecuted by a cross-bill or similar proceeding in the original suit is 'commenced' when the answer or cross-bill setting up the claim is filed." (19 A. & E. Encycl. of L., 2d ed., 259.)

In the case of *Insurance Co. v. Bullene,* 51 Kan. 764, 33 Pac. 467, it was ruled:

"Where certain defendants seek to enforce their demands against a codefendant, as to such demands the action will be deemed commenced as of the time when their answers setting up such demands are filed." (syl. ¶ 1.)

*Toby v. Allen,* 3 Kan. 399, has been cited as holding that for all purposes the statute of limitations runs against a defendant's claim until his answer or cross petition is filed, but all that was involved was the same question decided in *Insurance Co. v. Bullene,* supra.

In 19 A. & E. Encycl. of L., 2d ed., 258, it is said:

"The pendency of the suit operates to suspend the statute as to all parties thereto so far as the subject matter of the suit is concerned."

BURCH, J. (dissenting): I am unable to concur in an opinion which, in my judgment, has the effect of a judicial repeal of a perfectly plain statute. The statute reads as follows:

"When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense." (Civ. Code, § 24, Gen. Stat. 1915, § 6914.)

This is the concluding section of the general statute of limitations. In this state statutes of limitation are statutes of repose. For a variety of reasons it is considered bad policy to permit court investigation of old woes, and so the legislature took up the subject and fixed the times within which civil actions may be commenced. The forms of expression were:

"Civil actions can only be commenced within the periods prescribed in this article." (Civ. Code, § 14.)

"Actions for the recovery of real property . . . can only be brought within the periods hereinafter prescribed." (§ 15.)

"Civil actions, other than for the recovery of real property, can only be brought within the following periods." (§ 17.)

When the legislature had finished with the commencement of actions, it turned to defenses. The public policy is the same, whether the stale subject be revived on one side of a case or the other. Witnesses have dispersed, documents have been lost, memories have become hazy, and all the other reasons for repose exist as well in one instance as the other; so the article closed with section 24, which extended the policy so as to forbid assertion of claims as defenses which could not be asserted as causes of action for affirmative relief.

Let us follow the process by which nullification of this statute is accomplished.

The case of *Walker v. Boh*, 32 Kan. 354, 4 Pac. 272, is cited. The action was one by a claimant under a tax deed to quiet his title against the original owner. The decision, so far as applicable to this case, interpreted just one statute, and no other. That statute was section 141 of the tax law. The section was quoted in full as follows:

" 'Any suit or proceeding against the tax purchaser, his heirs or assigns, for the recovery of land sold for taxes, or to defeat or avoid a sale or conveyance of land for taxes, except in cases where the taxes have been paid or the land redeemed as provided by law, shall be commenced within five years from the time of recording the tax deed, and not thereafter.' " (p. 358.)

The court then proceeded to discuss the statute, as follows:

"Now it may be that this limitation has so run in favor of the plaintiff's tax deed that no person can maintain an action against him for the recovery of the land, or to defeat or avoid his tax deed. But this is not such an action. This is not an action *'against'* the plaintiff, but it is an action brought by himself and in his own favor; nor is it an action brought to recover the land or to defeat or avoid the tax deed, but it is an action simply to quiet title upon the assumption that the tax deed is valid, and virtually to bolster up and sustain the tax deed; and the defendant is simply *defendant*, and is not asking for any affirmative relief. Now it does not seem that this limitation reaches any such case as this. The statute seems to be enacted to prevent persons from *instituting* proceedings to defeat or avoid tax deeds after the five years have elapsed, but it does not seem to be enacted for the purpose of preventing persons from defending their rights when attacked." (p. 358.)

The italics in this quotation are not mine. The court had its own notion of what words should be emphasized, and alto-

gether failed to stress those which the majority opinion now underscores. Not once did the court depart from the language of the particular statute, and enter upon a consideration of the civil code limitations, or upon a general interpretation of statutes of limitation. The language was, "this limitation," "the statute," "this statute," and the holding clearly expressed in the syllabus was that, in an action by a tax purchaser to quiet his title, the limitation contained in section 141 of the tax law was not a bar to a defense by the original owner that the tax proceedings were irregular. Section 24 of the civil code was no more in the mind of the court than a league to enforce peace, and there is not the slightest utterance anywhere in the opinion indicating that the court either consulted or intended to adopt a general rule that our statute of limitations applies to causes of action only, and not to defenses.

In the majority opinion a distinction is attempted to be made between what are called affirmative defenses and what are called pure defenses. The legislature made none. The word defense has a settled meaning in the law, and its primary meaning is precisely that which the majority would attach to pure defense:

"DEFENSE. That which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover-or establish what he seeks; what is put forward to defeat an action." (Black's Law Dictionary, 2d ed., p. 344.)

Parties to a lawsuit either attack or defend. They attack whenever they demand affirmative relief, whether they be plaintiff or defendant, and it is a misnomer to call the demand for affirmative relief, made by a defendant who has turned on the plaintiff, an affirmative defense. It is the nature of the subject in controversy, and not the position of the parties or the prayer for relief, which determines whether or not the statute of limitations applies. This doctrine was announced as early as 1866, in the case of *Toby v. Allen*, 3 Kan. 399, in which the court said:

"The statute of limitations of this state, unlike the English statute, and that of some of the states copied therefrom, applies directly to the subject of the controversy; to the predicate of the action sought to be taken in the proceeding. And it can make no difference what may be the technical position in this suit, whether plaintiff or defendant, of the party seeking to enforce the claim. If it be such as requires affirmative

action on the part of the individual seeking to enforce it, it is wholly immaterial whether he occupies the position of plaintiff or defendant. The prohibition of the statute applies with equal force to it, be he in either position, so that it is wholly unnecessary to inquire whether the claim is properly the subject of an original action, of a set-off, counterclaim, or cross petition. In either event the operation of the statute is precisely the same." (p. 412.)

It is elementary that fraud must be pleaded and must be proved by the party alleging it. A defendant who desires to defeat the plaintiff on that ground must take affirmative action, not only to make the charge the subject of controversy, but to sustain the charge, and the prohibition of. the statute applies with the same force as if the defendant added a prayer for affirmative relief.

If section 24 had been omitted, the statute, which up to that point had referred to the commencement of actions, might well have been interpreted as not applying to defenses; but when the legislature said that when a right which might be enforced in court—as for example, right to relief on account of fraud—is barred, it shall be unavailable either as cause of action or ground of defense, it foreclosed any such interpretation.

The case of *Thomas v. Rauer*, 62 Kan. 568, 64 Pac. 80, is cited as directly in point. Fortunately, or unfortunately, the writer of the opinion in that case gave a reason. It rested on a decision of the court of appeals, the syllabus of which was quoted, and is reproduced in the majority opinion. The syllabus is to the effect that the statute barring relief on the ground of fraud applies only when the party against whom the statute is urged is obliged to plead fraud, or to prove fraud, to entitle him to relief. Section 24 of the code was not referred to, and was as remote from the mind of the court of appeals as it was from the mind of this court in *Walker v. Boh*, supra. Suppose, however, that in order to defeat liability on a note confessedly executed, delivered, due, and unpaid, the maker were obliged to plead and to prove fraud in obtaining the note. What application would the decision of the court of appeals have? By clear implication the statute of limitations would apply. In any event, as *amicus* to the court of appeals, I desire to protest against shifting responsibility for ruin of section 24 of the code to its shoulders.

In the case of *Thomas v. Rauer,* supra, this court merely trod in the tracks of the court of appeals, utterly oblivious of the existence of section 24.

The cases of *Coale v. Campbell,* 58 Kan. 480, 49 Pac. 604, and *Stump v. Burnett,* 67 Kan. 589, 73 Pac. 894, were tax-deed cases which simply followed *Walker v. Boh,* supra, in the interpretation of section 141 of the tax law.

The foregoing are all the decisions of this court relied on as committing the court to the doctrine that statutes of limitation do not apply to defenses. Not one of them touches even remotely the subject of the meaning and effect of section 24. Why is this court committed to an interpretation of a statute by decisions which do not consider the statute at all?

The majority opinion indicates its own view of *dictum.* In the case of *Gibson v. Johnson,* 73 Kan. 261, 84 Pac. 982, the plaintiff commenced a statutory action to quiet title. The defendant answered that he was in possession under a mortgage given by the plaintiff, which had not been paid. The reply was that the mortgage was barred by the statute of limitations. There was a demurrer to the reply. The plaintiff thus sought to gain by indirection the advantage of facts which would defeat recovery if he embodied them in his petition. It became necessary, therefore, in order to ascertain the true relation and application of the statute of limitations to the suit, to determine what was and what was not defense. Counsel for plaintiff in the suit cited and relied on the very provision of the code now under consideration. Not only that, he quoted in his brief from a decision of this court interpreting that provision in a manner directly contrary to the present view of the majority. The quotation, which was from *Hogaboom v. Flower,* 67 Kan. 41, 72 Pac. 547, follows:

"Another contention is that in an action to quiet title to real estate the plaintiff cannot interpose the statute of limitations against a defendant mortgagee. Section 4453, General Statutes of 1901, provides that 'when a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense.' This provision is broad enough to include all actions whether legal or equitable. A right of action thus barred is dead for all purposes while the bar continues. Courts cannot revitalize it or give it force; it is as if no such right had ever existed. It is of no importance how or by whom it is brought upon the record; it is no more potent to defeat a recovery than it is to sustain one." (Briefs, 73 Kan. vol. 8, Case No. 14,521.)

The argument of counsel was pertinent and could not be ignored. It was discussed and, contrary to the statement in the majority opinion, what was said on the subject was not *dictum*.

Concede, however, that the decision might have been made without reference to the statute. We have, then, a case which is not authority on the interpretation of the statute, because the statute might have been left out of account. How does it come that the court is irrevocably committed to a contrary interpretation of the same statute by decisions which undeniably did leave it out of account?

Contrary to the declaration of the majority opinion, that the statute has not been held to apply to pure defenses, so-called, it was so held in the case of *Donald v. Stybr,* 65 Kan. 578, 70 Pac. 650, the first case, so far as known, in which the statute was considered. The action was one to quiet title. The answer set up facts which disclosed a right to redeem, barred, however, by the statute of limitations. The court considered the answer in both aspects, as an affirmative defense authorizing a decree permitting redemption, and as a pure defense defeating the plaintiff's suit, without more. The statute was applied, and it was held the answer neither stated a cause of action to redeem nor a defense to the suit to quiet title. This case is not referred to in the majority opinion.

The case of *Hogaboom v. Flower,* referred to above, is not mentioned in the majority opinion. In that case counsel for defendant quoted the statute, applied it in argument, and said:

"This statute apparently means what is says, and it is so plain that there can be no mistaking its meaning." (Briefs, 67 Kan. vol. 3, Case No. 13,096.)

The language of the opinion shows that the court agreed with counsel.

The reference in the majority opinion to the general rule recognized by text-writers and the decisions of other states merely adds to the length and not to the strength of the opinion, because no text and no decision, having under consideration a statute of limitations like that of Kansas, is produced.

The result is, the majority opinion, which purports to rest on authority and inferences derived therefrom, is unsupported by any authority, from Kansas or elsewhere. On the other hand, on three occasions when the statute has been directly in-

volved and specifically considered, the court has interpreted it according to its plain and simple terms, according to the policy it was enacted to promote, and contrary to the majority view.