Nos. 22,908 and 22,935.

RICHARD BEACHY, *Appellee,* V. HENRY D. JONES, *Appellee and Appellant,* and WILLIAM CAMPBELL, *Appellant and Appellee.*

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Holder in Due Course—Defense of Fraud in Its Procurement—Burden of Proof.* Where a plaintiff transferee of a negotiable promissory note sues the maker and payee as codefendants thereon, claiming to be a holder in due course, and the defendant maker pleads and his evidence tends to prove that he was induced by the fraud of the payee to execute and deliver the note, the plaintiff has the burden of showing by evidence that he acquired the note in the usual course of business, before maturity, and without notice of any vice in it; and unless that evidence is so clear and unequivocal as to leave no room for difference of opinion concerning it among fair-minded men, the question as to the issue and the credibility of the evidence is for the jury and it is error to instruct the jury to render a verdict for plaintiff.

2. SAME—*Pleading—Prayer for Relief Not Important*  When a pleading states all the necessary facts to maintain a defense to an action on a promissory note, and the evidence is sufficient to support its allegations, and the parties concerned are in court, the pleader's prayer is not important; and it is the court's duty to render the proper judgment therein; and such judgment may or may not conform in whole or in part to the relief prayed for by the pleader—following *Eagan v. Murray,* 102 Kan. 193, and citations, 170 Pac. 389.

3. SAME—*Evidence for Defense—When Pleading Should Be Construed to Conform to Facts Shown.* When the trial court permits evidence to be introduced *in extenso* to support a defense to a promissory note, the pleading upon which such defense was intended to be based should be construed as if it sufficiently set out the facts or as if the issues had been enlarged by consent of parties.

4. SAME—*Judgment—Control of, During Term at Which it Was Rendered.* During the term at which a judgment is entered the trial court has complete control of that judgment, and may permit amendments to pleadings in furtherance of justice even after judgment, and may grant a new trial thereon; and if the trial court is not satisfied that the litigants have received substantial justice, it may and should grant a new trial.

5. SAME—*Statute of Limitations—Can Only Be Raised by Special Plea.* Where an action is brought on a promissory note against the maker and payee as codefendants, and the maker files an answer and cross petition against his codefendant alleging the fraud of the latter in

Beachy v. Jones.

procuring the note, and the payee's answer to such cross petition is merely a general denial, such answer is insufficient to raise a question of the statute of limitations, as such a defense can only be raised by a specific plea—following *Parker v. Berry*, 12 Kan. 351; *Croan v. Baden*, 73 Kan. 364, 85 Pac. 532.

6. CHANGE OF VENUE—*Judge Interested in Suit—Change Properly Granted.* When an attorney who had been of counsel in a lawsuit becomes the district judge of the forum, a change of venue is proper in such case, but such judge may with entire propriety consider the motion for a change of venue and he has jurisdiction to grant it.

7. PROMISSORY NOTE—*Two Appeals—Reversed in Toto—New Trial Ordered De Novo Between all Parties.* Where a judgment has been rendered against two codefendants on a promissory note, and the question of primary and secondary liability is determined therein, and the defendant who is held primarily liable appeals from the judgment, and the defendant who is held secondarily liable does not appeal therefrom but does appeal from an order granting a new trial of cross issues joined between the two codefendants, this court may, when it is proper that the judgment should be reversed at the instance of the defendant who did appeal, order the judgment reversed *in toto* and order a trial *de novo* between all the parties when such order is necessary to prevent a possible miscarriage of justice.

Appeals from Jewell district court; CHARLES L. KAGEY, judge *pro tem.* Opinion filed January 8, 1921. Case No. 22,908 affirmed. Case No. 22,935 reversed.

*A. M. Harvey*, of Topeka, *R. C. Postlethwaite*, of Mankato, *L. C. Uhl*, *L. C. Uhl, jr.*, both of Smith Center, for appellant Henry D. Jones; *R. W. Turner*, and *Donald F. Stanley*, both of Mankato, for appellant William Campbell.

*F. W. Mahin*, of Smith Center, and *J. R. White*, of Mankato, for appellee Richard Beachy.

The opinion of the court was delivered by

DAWSON, J.: These appeals pertain to distinct but related phases of an action to recover on a promissory note for $4,500 given by Henry D. Jones to William Campbell, who sold and guaranteed the note to Richard Beachy.

Campbell and Beachey are competing bankers in the little town of Esbon in Jewell county. Jones is a farmer residing in Smith county, 18 miles southwest of Esbon.

During the year 1916, one H. J. Egan, a comparative stranger who had been in that locality for a short time, to-

gether with Charles Campbell, a son of William Campbell, called on Jones and offered to sell him some stock in the Mid-west Asbestos Company, an Arizona corporation having offices in Denver and some mining property in Wyoming. Egan and young Campbell told Jones that a railway was about to be built to the company's mines and that asbestos was being shipped therefrom at the rate of two or three carloads per day. They also assured Jones that the stock was regularly paying divi-dends of 8 per cent. Jones did not buy when first approached; he said he wanted to investigate. Egan and Campbell called at other times and exhibited letters and telegrams pretending to show that the situation of the mining company was pros-perous and auspicious. On one occasion the defendant William Campbell called at the Jones farm, accompanied by Egan and the younger Campbell, and the subject of the asbestos mining stock was discussed. Jones testified:

"I says to Mr. William Campbell, says I, 'Mr. Egan and Mr. Charlie Campbell have been trying to sell me some asbestos stock,' and I asked him what he thought about it, he said he thought it would be an awful good deal, he thought it was very valuable stuff and he thought it was going to get more valuable, he said he thought it would be a good buy, was a good investment, I said, 'the boys here say, Egan and Charlie, that you own twenty-seven thousand shares of asbestos stock yourself,' and he says, 'Yes, that is about right, I guess about that many,' and I asked him how long he had owned it, and he said, well, he had bought it at dif-ferent times, but he had owned it about three years and I asked him if he always got his eight per cent dividends on his preferred stock, and he told me he had and then we talked a little about one thing and another, not much in particular, and Mr. Egan says to me, 'Well,' they had been trying to sell the stuff before, this stock, and he said, 'Well, Henry, are you going to buy this stock this evening?' He wanted the cash for this and I told him I didn't have the money just then. I didn't have any doubt but what it was good stock from what they told me, and Mr. Wil-liam Campbell had recommended it, and I said I didn't believe I would buy any just at present, but I said I would study the matter over and 'let you know in a day or two,' and so they drove off and that is as near as I can tell you what they said about it."

Shortly thereafter, the younger Campbell brought to Jones a certificate for 10,000 shares of common stock and 10,000 shares of preferred stock in the asbestos company, for which Jones gave this note in dispute for $4,500, payable to William Campbell in two years at Campbell's bank in Esbon. Before signing the note, and above his signature, Jones wrote—"For

Beachy v. Jones.

$10,000 shares of Midwest Asbestos Stock." William Campbell promptly sold the note to the plaintiff, Richard Beachy, cashier of the other local bank in Esbon, and Campbell opened an account in Beachy's bank with the proceeds. In time this account was closed. At the time Beachy purchased the note he exacted a written obligation from William Campbell guaranteeing its payment.

A few weeks later, Jones was called on to pay a small assessment on his stock, and he went to William Campbell to inquire about it. Campbell said he intended to pay his own assessment, and that he still thought the stock would prove valuable. In August, 1917, when it transpired that he received no dividends, Jones made a journey to the asbestos company's headquarters at Denver, and also to the company's mines in Wyoming. There he learned that the property was not being worked and that the company had never paid a dividend, and upon his return to Kansas in September, 1917, he called upon William Campbell and Beachy, tendered them the certificates of stock and demanded the surrender of the note. This was refused. The day after this transpired, Beachy sold the note to his own bank, and later he reacquired it, and in July, 1919, this action by Beachy was begun against William Campbell and Jones.

Jones filed an answer and cross petition, alleging at length the misrepresentations of Egan and the two Campbells whereby he was defrauded into giving them the note. His prayer, as originally drawn, did not ask for a judgment against Campbell if he failed in his defense against Beachy. He merely prayed that the plaintiff take nothing as against him and that the note be held for naught as far as he was concerned.

Campbell's amended answer admitted the matters alleged in plaintiff's petition, but with this addition:

"But this defendant further avers that his liability on said note is that of a surety or endorser, is not primary but is secondary to that of the principal maker, the defendant, Henry D. Jones."

Campbell's answer and reply to Jones's answer and cross petition was a general denial.

At the conclusion of the evidence, the trial court directed a verdict for plaintiff against Jones and Campbell. Counsel for

Jones then requested that the issues raised between Jones and Campbell be tried:

[Counsel for Jones.]

"We will ask that we go ahead and try this issue out as between the two defendants, there is an issue that is raised by the pleadings in this case, and the theory of the code is to prevent multiplicity of suits.

. . . . . . . . . . . . . . .

"The Court: The court holds that under the answer and cross petition filed by the defendant Jones, that no relief of any character whatever has been asked by the defendant Jones against the defendant Campbell. The court is therefore of the opinion that the request coming after the conclusion of the evidence and after a motion to direct a verdict in favor of the plaintiff has been sustained, comes too late in this suit, and the request is therefore denied, to which ruling of the court the defendant Jones duly excepts."

Thereupon Jones moved to amend the prayer of his cross petition so as to ask for alternative relief against Campbell. This at first was denied, and judgment for plaintiff was entered against both defendants. The primary liability was placed on Jones and the secondary liability on Campbell.

Jones filed a motion for a new trial, which was overruled as to the plaintiff, but sustained as to Campbell, on condition that the cross petition be amended instanter. Thereupon Jones amended his prayer as follows:

"That in the event the said note be found and decreed by this court to be a valid and existing obligation of this defendant Henry D. Jones in favor of said plaintiff, then this defendant Henry D. Jones by reason of the facts herein alleged asks judgment against the defendant, William Campbell, for the amount of said liability, judgment, interest and costs, and for such other and further relief as the court may deem proper in the premises."

Campbell filed a motion to vacate the order granting Jones a new trial. This was denied.

This action had been tried by a judge *pro tem.* Later the regular presiding judge resigned, and Hon. W. R. Mitchell, who had been of counsel for Jones, was appointed and qualified as his successor; and thereafter Jones filed an application for a change of venue. Still later, Campbell, by "special appearance," filed another motion to vacate the order granting a new trial. The new trial judge refused to consider this motion to vacate the order granting a new trial but sustained the application of Jones for a change of venue; and directed that the cause be transferred to the district court of Republic county.

Beachy v. Jones.

Jones appeals from the judgment rendered in favor of plaintiff.

Campbell appeals from the orders permitting Jones to amend his pleading, granting Jones a new trial against him, and granting a change of venue.

Considering these matters in logical order, it will be noted that Jones pleaded and his evidence tended to prove that the note was procured by fraud, and that Campbell was a party to it. Assuming the truth of that evidence, the burden was then upon Beachy, the plaintiff, to prove that he acquired it before maturity, for value, and in good faith, and that he had no notice of any defect in the title of the person negotiating it. (Negotiable-instruments Act, § 66, Gen. Stat. 1915, § 6586; *Ireland v. Shore,* 91 Kan. 326, 137 Pac. 926; *Schmidt v. Benedict,* 104 Kan. 196, 178 Pac. 444; Brannan's Negotiable Instruments Law, 2d ed., 68; Crawford's Annotated Negotiable Instruments Law, 4th ed., 115.)

Perhaps the evidence offered by Beachy did maintain that burden, but even so it was error for the court to take for granted the truth of that evidence. Moreover there were some circumstances surrounding the transfer of this note which tended to charge Beachy with notice that there was something the matter with it. Campbell was himself in the banking business, and it might be considered unusual that he should seek to discount the note to his business rival whose bank was probably as little able to carry the note as his own. It was also unusual that Campbell who had a bank of his own in the same village should open an account in his competitor's bank with the proceeds of this note. Moreover, the note plainly stated that it was given for shares in mining stock, which was rather a questionable thing for a respectable small-town banker in northwest Kansas to be dabbling in. There are no local mining ventures in that part of the state, at least no asbestos mines. It could not be said as a matter of law that these and other circumstances, although perhaps slight in themselves, did not raise an inference tending to discredit plaintiff's evidence as to his lack of knowledge concerning the infirmity of the note. Be that as it may, the question whether Beachy was a holder in good faith was clearly a question for the jury, under section 66 of the negotiable-instruments act.

In *Phillips v. Eldridge*, 221 Mass. 103, the court said:

"There was evidence that the note here in suit was procured by duress practiced by the payee on the makers. If that evidence was believed, the plaintiff to recover had the burden of proving that he was a holder in due course as defined in R. L. c. 73, § 69. The plaintiff and the payee, when called as adverse witnesses by the defendants, testified to facts which would have warranted a finding that the plaintiff was a holder in due course. But the jury were not bound to believe their testimony, although uncontradicted, and therefore a verdict for the plaintiff could not have been directed as matter of law.

"When testimony warranting a finding that the plaintiff was a holder in due course of a note originating in fraud is given by witnesses called by the plaintiff, it is settled that a verdict cannot be directed for the plaintiff as matter of law." (p. 104.)

In *Arnd v. Aylesworth*, 145 Iowa, 185, on a similar question, it was said:

"And to justify the court in directing a verdict in her favor the testimony of the *bona fide* character of her holding must not only be without substantial evidence tending to impeach it, but the showing in its support must be so clear and unequivocal as to leave no room for difference of opinion concerning it among fair-minded men." (p. 188.)

In *Bank v. Fountain*, 148 N. C. 590, the rule was thus stated:

"When it has been established or there is allegation and evidence tending to show that a negotiable instrument was procured by fraud, in a suit by one claiming to be the holder in due course, it was error for the trial judge, upon supporting evidence, to charge the jury that the *prima facie* case of the plaintiff was restored by his uncontradicted testimony; that he acquired the note in the usual course of business, before maturity and without notice of any vice in it, as the burden of proof thereof was upon plaintiff, and the question as to the issue and the credibility of the evidence thereon was one for the jury." (Syl. ¶ 2.)

In the trial court it seems that there was some question as to genuineness of the transaction in which Beachy sold the note to his own bank, but we do not regard that matter as important, because Beachy was the managing officer of his bank and if he personally had notice of the note's infirmities, he could not improve his status as a holder by transferring it to his own bank for a time and then taking it back from his bank. It was promptly on the heels of Jones's complaint of fraud to Campbell and Beachy and his demand on them for the return of the note that Beachy transferred it from himself to his bank, and whatever Beachy knew about the note's infirmities

was notice to Beachy's bank. (*Underwood v. Fosha,* 96 Kan. 240, 243, 244, 150 Pac. 571.)

From this it follows that the judgment in plaintiff's favor against Jones must be set aside.

Passing next to the controversy between Jones and Campbell, there was nothing material the matter with Jones's cross petition. It narrated all the pertinent facts necessary to state a defense to the action, and a defense to Campbell's claim that Jones was primarily liable and himself only liable secondarily, and evidence thereon *in extenso* was admitted by the trial court. The only defect in the petition—if it was a defect—was in the prayer, and that is seldom very important. In *Eagan v. Murray,* 102 Kan. 193, 170 Pac. 389, it was said:

"The prayer of a petition is merely the pleader's idea of the relief to which he is entitled; it is not a part of the statement of the cause of action; and if the cause of action [or defense] is sufficiently stated and sufficiently proved, the court will adjudge and decree the proper legal redress, which may or may not conform in whole or in part to the relief prayed for by the pleader." (Syl. ¶ 2.)

Jones's pleading was a pure defense as to Beachy, and it was a proper defense against Campbell's pleading that Jones was primarily and himself only secondarily liable. But even if the cross petition had been insufficient to state the sort of defense which Jones was striving to maintain, the court admitted evidence to maintain that defense, so Jones's pleading should have been considered as if it had been amended, or as if the issues had been enlarged by consent of parties. (*Hartwell v. Manufacturing Co.,* 78 Kan. 259, 97 Pac. 432; *Custer v. Royse,* 104 Kan. 339, 343, 179 Pac. 353.)

Since it would have been proper for the trial court to have granted the defendant Jones the relief against Campbell which his answer and cross petition and evidence showed him to be entitled to, without amendment, if credence was given to Jones's evidence, there could not possibly be an error in permitting Jones to make a belated amendment to his pleading to that effect. Although judgment had already been rendered, the judicial term was still open and the trial court still had full control of the judgment (*Sylvester v. Riebolt,* 100 Kan. 245, 164 Pac. 151; *Karr v. Moffett,* 105 Kan. 692, 694, 185 Pac. 890), and it was within its discretion to allow the belated

amendment (*Bank v. Badders,* 96 Kan. 533, syl. ¶ 3, 159 Pac. 651) ; and unless the trial court was satisfied with the result of the trial it was its duty to grant a new trial. In *Sanders v. Wakefield,* 41 Kan. 11, 14, 20 Pac. 518, it was said:

"New trials ought always to be granted whenever, in the opinion of the trial court, the party asking for a new trial has not in all probability had a reasonably fair trial, and has not in all probability obtained or received substantial justice."

(See, also, *Atkinson v. Darling,* 107 Kan. 229, 231, 191 Pac. 486.)

It is also argued that the fraud of Campbell, if any, was discovered by Jones more than two years before he filed his answer and cross petition against his codefendant Campbell, and consequently the alternative relief against him which Jones would otherwise be entitled to, if plaintiff prevailed against Jones, was barred by the statute of limitations. (Civ. Code, § 17, subdiv. 3.) This contention would raise an interesting question (see *Muckenthaler v. Noller,* 104 Kan. 551, 180 Pac. 453; *Gregory v. Williams,* 106 Kan. 819, 189 Pac. 932), but Campbell's answer did not plead that statute and therefore it cannot now be considered. (*Parker v. Berry,* 12 Kan. 351; *Croan v. Baden,* 73 Kan. 364, 85 Pac. 532.)

After the attorney for Jones had been elevated to the bench, a change of venue was altogether proper, but it would have been a useless formality, and not required by the civil code (§ 57), for the new judge to have called in another judge to hear the application therefor. (*Isenhart v. Hazen,* 10 Kan. App. 577, reported in full in 63 Pac. 451; 40 Cyc. 144, 145.)

In a final brief for Campbell, in case No. 22,935, his counsel say:

"Our interest in this particular case is that should it be reversed, the plaintiff could, and probably would dismiss as to Jones and we would be absolutely liable under our pleadings. If the decision is affirmed we escape liability."

That matter can be taken into consideration in our general disposition of these appeals. Throughout our consideration of this case, the facts have been discussed largely from Jones's standpoint. This we were bound to do because of the court's rulings thereon. But we have no purpose to foreclose the case on those facts. If the jury should believe that the note was

procured by fraud, then the innocency of Beachy as a holder in due course was a question for the jury. If the jury should not believe that the note was procured by fraud, then Beachy's cause of action would be sufficiently maintained on the evidence which he did produce, and an instructed verdict in his behalf would be proper. (*Bank v. Myrick,* ante, p. 191.) But in order to prevent miscarriage of justice, the new trial should be on all the issues involved and between all the parties to the original action. (29 Cyc. 734.)

The judgment in appeal No. 22,935 against Campbell and Beachy is reversed, and the judgment in appeal No. 22,908 awarding a new trial between Campbell and Jones is affirmed, and both appeals are remanded with instructions that a trial *de novo* be granted between all the parties.